UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| LAKE CUMBERLAND REGIONAL HOSPITAL, LLC,<br><br>Plaintiff,<br><br>V.<br><br>COVENTRY HEALTH & LIFE INSURANCE CO.,<br><br>Defendant. | CIVIL ACTION<br>NO. 6:16-268-KKC<br><br><br>**OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion of defendant Coventry Health and Life Insurance Company to compel arbitration (DE 5) and the motion of plaintiff Lake Cumberland Regional Hospital, LLC for leave to file a supplemental response (DE 15).

For the following reasons, Coventry's motion to compel will be **GRANTED**, and Lake Cumberland's motion for leave to file a supplemental response will be **DENIED** as moot.

## I. Background

Coventry is a managed care organization in Kentucky's Medicaid program. (DE 1-1, Compl. ¶ 3). By contract, the Commonwealth of Kentucky pays Coventry to manage healthcare services for segments of Kentucky's impoverished populations. (DE 1-1, Compl. ¶ 3). Lake Cumberland is a hospital in Somerset, Kentucky, which provides healthcare services for an eleven-county region in the south-central part of the state. (DE 1-1, Compl. ¶ 1). Lake Cumberland provides medical care to Kentuckians enrolled in Coventry's Medicaid plans. (DE 1-1, Compl. ¶ 4).

1

By law, Lake Cumberland is required to provide emergency care to individuals who present to its emergency department. *See* 42 U.S.C. § 1395dd. Coventry reimburses Lake Cumberland for fees associated with the emergency medical care provided to its members.[1] Federal and state law require Coventry to employ the "prudent layperson standard" when it makes determinations about these reimbursements. (*See* DE 1-1, Compl. ¶¶ 36–45).

The parties do not dispute that the prudent layperson standard governs important aspects of their relationship. Rather, the parties disagree on how Coventry is to apply the prudent layperson standard in making its reimbursement determinations. Presently, if Coventry determines the prudent layperson standard has not been met, it will only pay the hospital a $50 "triage fee." (DE 1-1, Compl. ¶ 9).

In its complaint, Lake Cumberland argues that Coventry has unilaterally, and improperly, changed the method by which it reimburses Lake Cumberland for the emergency medical care the hospital provides to Coventry's members who present for treatment. Lake Cumberland contends that Coventry is using diagnostic codes and algorithms to determine how it reimburses the hospital and argues this is in contravention of the proper manner by which the prudent layperson standard should be applied.

In Lake Cumberland's view, the prudent layperson standard requires Coventry to reimburse the hospital "if the prudent layperson would have believed he or she was experiencing a serious medical condition at the time of presentment, even if it later appears that the condition was not as serious or imminent as the layperson believed when he or she traveled to the [emergency department]." (DE 1-1, Compl. ¶ 88).

---

[1] Lake Cumberland only challenges the reimbursement process for emergency claims. (*See* DE 9, Response at 9 n.2) ("The review process for nonemergency services is not subject to the same federal and state standards imposed for the review of emergency services, and the Hospital has not challenged Coventry's review process for non-emergency claims.").

Lake Cumberland originally filed suit in Pulaski County Circuit Court in Pulaski County, Kentucky. (DE 1-1). Coventry removed the case to federal court (DE 1) and filed the instant motion to compel arbitration (DE 5).

Through its complaint, Lake Cumberland seeks declaratory and injunctive relief relating to Coventry's interpretation of the prudent layperson standard. Specifically, Lake Cumberland asserts five counts against Coventry.

Count I seeks a declaratory judgment that Coventry's triage fee policy violates state law and a judgment that defines the factors, parameters, and information to be considered in applying the prudent layperson standard established by Kentucky law. Count II asserts a violation of Kentucky's Unfair Claims Settlement Practices Act. Count III asserts a violation of the Kentucky Prompt Pay Act. Finally, Count IV seeks an injunction barring an assertion of the defense of claim preclusion.

In its prayer for relief, Lake Cumberland asks the Court to do the following:

A. Declare that Coventry's triage fee violates state and federal law;

B. Declare the evidentiary rules, including presumptions, factors, and parameters, that govern the application of the "prudent layperson" standard, and more specifically to order, among other things:

   1. That the decision of a layperson member to travel to an emergency department creates a rebuttable presumption that such layperson was acting as a "prudent layperson";

   2. That expert evaluations are inadmissible to rebut the presumption that a layperson who travels to an emergency department was acting as a "prudent layperson"; and

   2. That expert evaluations conducted after a member is seen in an emergency department are inadmissible to evaluate the decision of whether a layperson who travels to an emergency department was acting as a "prudent layperson."

C. Declare that retrospectively reviewing the determination of whether a member's condition was an emergency based on the patient's final diagnosis, instead of the patient's symptoms at the time he or she presented in the emergency department, violates state and federal law;

3

D. Declare that using a list of symptoms and diagnostic codes, or their equivalent, to determine whether a condition was an emergency violates state and federal law;

E. Permanently enjoin Coventry from:

  1. Failing to pay the hospital for emergency services at the rates previously negotiated and set forth in the contract between Coventry and the hospital;

  2. Using the final diagnosis or using a list of symptoms or diagnostic codes, including as part of a formulaic algorithm, to determine whether to reimburse the hospital for treatment of Coventry's members who seek emergency care; and

  3. Failing to rely upon a licensed physician's determination of whether a condition is an emergency and failing to provide the hospital with the scientific or medical reasons why a claim was denied or reduced;

F. Declare that the triage fee is a violation of the Unfair Claims Settlement Practices Act and the Kentucky Prompt Pay Act, and award the Hospital damages, interest, and fees and expenses under those statutory actions;

G. Award the hospital its reasonable legal costs, fees, and expenses; and

H. Award the hospital such other general and equitable relief as this Court may deem just, proper, and equitable.

(DE 1-1, Compl.).

Through its motion to compel arbitration, Coventry asks the Court to enforce the arbitration provision found in the parties' contract. That provision states in relevant part:

> In the event a dispute between Coventry . . . and Hospital arises out of or is related to the Agreement, the Parties involved shall make good faith efforts to settle the dispute by negotiation between the Parties. If negotiation between the Parties is unable to resolve a dispute within thirty (30) days of the date the aggrieved party sends written notice of the dispute to the other Party, and if any Party wishes to pursue the dispute, it shall be submitted to binding arbitration . . . . Except for such relief expressly contemplated by the Agreement, any dispute arising out of the Agreement must be submitted to binding arbitration and jurisdiction shall not be found in a court of law.

(DE 5-2, Agreement ¶ 6.3).

Filings in this case reveal that the parties are already in arbitration. (*See* DE 5-1, Mem. at 4). Thus, the Court must determine whether any of Lake Cumberland's claims must be arbitrated.

## II.     Discussion

In its motion, Coventry argues that Lake Cumberland's claims arise out of or are related to the parties' agreement and that this Court should compel arbitration and stay the present proceeding. Lake Cumberland, on the other hand, disagrees that the issues arise out of or are related to the contract between the parties and instead asserts that its claims can be resolved without reference to the contract. Lake Cumberland also argues that, even if its claims arise out of or are related to the contract, the parties' agreement would be exempt from arbitration under applicable Kentucky law as an insurance contract.

As a preliminary matter, the Court recognizes the Federal Arbitration Act's application in this case. The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, there is a strong presumption favoring arbitration and any doubts regarding arbitrability must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 450 (6th Cir. 2005).

However, this policy "is not so broad that it compels the arbitration of issues not within the scope of the parties' arbitration agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.,* 513 F.3d 646, 649 (6th Cir. 2008). Thus, "[b]efore compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Id.* (internal quotation marks omitted).

In this case, the parties both acknowledge the arbitration provision contained in their agreement. However, the parties disagree as to whether Lake Cumberland's claims fall within the scope of that provision.

The parties' arbitration provision is broadly written. In such a case, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (internal quotation marks omitted). Moreover, "broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview." *Watson Wyatt*, 513 F.3d at 650.

Whether Lake Cumberland's claims are covered by the arbitration provision depends on whether the Court can resolve the hospital's claims "without reference to the agreement containing the arbitration clause. If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise." *NCR Corp. v. Korala Assocs., Ltd.,* 512 F.3d 807, 814 (6th Cir. 2008) (citation omitted). "A claim, regardless of the legal label assigned to it, falls within the scope of this extremely broad arbitration clause if the allegations underlying the claim or its defenses involve matters covered by the agreement." *First Union Real Estate Equity & Mortg. Invs. v. Crown Am. Corp.*, 23 F.3d 406 (6th Cir. 1994) (unpublished table decision), available at 1994 WL 151338, at *3.

The easiest claim for the Court to dispense with is Lake Cumberland's request that the Court permanently enjoin Coventry from "[f]ailing to pay the Hospital for emergency services at the rates previously negotiated and set forth in the contract between Coventry and the Hospital." (DE 1-1, Compl.). This claim clearly arises out of the agreement between the parties and must be arbitrated. Lake Cumberland concedes as much. (DE 9, Response at 11)

6

("If the Court concludes that the FAA applies to this dispute, the Hospital will strike this claim from the Complaint and submit it to arbitration.").

As for Lake Cumberland's other requests for relief, the Court must consider the context in which Lake Cumberland's claims are made. Although Lake Cumberland fervently argues that Coventry's obligations to pay the hospital derive from sources other than the contract between the parties, the fact remains that the parties *do* have an agreement and that the agreement *does* obligate Coventry to pay Lake Cumberland for the emergency services the hospital provides to Coventry's members. Moreover, the parties' agreement *does* incorporate the prudent layperson standard, which is essential to Lake Cumberland's claims and Coventry's defenses. Finally, the parties' agreement *does* contain an arbitration provision, which requires the arbitration of claims that arise out of or relate to the agreement.

To explain it differently, the parties' agreement incorporates the prudent layperson standard. Thus, all of Lake Cumberland's claims will require an interpretation of that standard, which is incorporated by and essential to the contract between the parties. *See First Union*, 1994 WL 151338, at *3. As Coventry explained in its reply brief, "the very analysis of whether and how the Provider Agreement incorporates the prudent layperson standard must be analyzed with reference to the Provider Agreement." (DE 12, Reply at 6).

Even more so, although the Court has not granted Lake Cumberland leave to file a supplemental response, that filing does not alter the Court's determination of the proper nature of ordered arbitration. Instead, certain statements within that filing undercut Lake Cumberland's assertion that this matter can be decided without reference to the contract. By way of illustration, Lake Cumberland references a statement Coventry made to the Kentucky Department of Medicaid Services that the triage fee would remain in effect "for those providers that do not have year-end settlement clauses." (DE 15-1, Proposed Supp. Response

at 3). This statement helps demonstrate the contractual nature of the relationship between the hospital and Coventry.

In addition, Lake Cumberland's argument that the parties' agreement is an insurance contract under Kentucky law is without merit. Under KRS 417.050(2), arbitration clauses in insurance contracts are unenforceable. *See Nat'l Home Ins. Co. v. King*, 291 F. Supp. 2d 518, 528 (E.D. Ky. 2003). However, Kentucky case law dictates that "[i]n the absence of a specific definition of insurance in KRS 417.050, the word is used in its common application." *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501, 504 (Ky. 1998). In *Buck Run*, the Supreme Court of Kentucky explained common characteristics of an insurance policy:

> An insurance policy is a contract of indemnity whereby the insurer agrees to indemnify the insured for any loss resulting from a specific event. The insurer undertakes the obligation based on an evaluation of the market's wide risks and losses. An insurer expects losses, and they are actuarially predicted. The cost of such losses are spread through the market by means of a premium.

*Id.* at 504–05.

The parties' agreement was not an "insurance contract" as that phrase is used in its common application. Instead, the parties had a service contract, which takes their agreement out of the purview of KRS 417.050(2).

Thus, the parties' arbitration provision is enforceable, and because Lake Cumberland's claims fall within that provision's broad purview, the Court will grant Coventry's motion to compel arbitration.

### III. Conclusion

To simply state the facts of this case, Coventry has developed a system to lessen the amount of money it has to pay to healthcare entities, including Lake Cumberland, for emergency services provided to its members. Lake Cumberland dislikes Coventry's method for determining the amount of reimbursements Coventry will provide and asks this Court to

define the parameters that govern the standard—the prudent layperson standard—that Coventry is to use when making its reimbursement decisions.

However, the parties' agreement contains a broad arbitration provision, which requires claims that arise out of or relate to the agreement to be submitted to binding arbitration. Lake Cumberland's claims and requests for relief necessarily involve matters that arise out of or relate to the parties' contract, particularly its challenges to the method by which Coventry interprets and applies the prudent layperson standard. Thus, Lake Cumberland's claims must be arbitrated.

Moreover, because all of Lake Cumberland's claims will be submitted to arbitration, this case will be dismissed rather than stayed. *See Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999) (unpublished table decision), available at 1999 WL 993775, at *4 (citing *Alford v. Dean Witter Reynolds Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal is proper where all claims must be submitted to arbitration)).

Accordingly, Coventry's motion to compel arbitration will **GRANTED** (DE 5), and Lake Cumberland's motion for leave to file a supplemental response is **DENIED** as moot (DE 15). Further, Lake Cumberland's notice of filing (DE 18) will be **STRICKEN** from the record. A separate judgment shall issue.

Dated September 14, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY